## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MAURICE CARTER, individually and | : | |
| on behalf of a class of persons | : | |
| similarly situated | : | |
| | : | |
| v. | : | Civil No. CCB-12-0167 |
| | : | |
| | : | |
| STEWART TITLE | : | |
| AND GUARANTY CO. | : | |
| | : | |
| | : | |
| | : | |

### MEMORANDUM

Plaintiff Maurice Carter ("Mr. Carter") has brought this action, on behalf of himself and a similarly situated class of plaintiffs (collectively, "the plaintiffs"), against defendant Stewart Title Guaranty Company ("Stewart"). The complaint alleges that Stewart overcharged Mr. Carter and other consumers who refinanced their homes within ten years of obtaining valid title insurance on the same property by not providing them discounted "reissue" rates. Mr. Carter asserts claims under Maryland law and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. Now pending before the court is Stewart's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The issues in this case have been fully briefed and no oral argument is necessary. For the following reasons, Stewart's motion will be denied.

**Background**

Maurice Carter has owned his home in Baltimore City since 1998. (Am. Compl., ECF No. 20, ¶ 28.) At the time Mr. Carter purchased the property, he obtained an owner's title insurance policy covering the full value of his home (*Id.* at ¶ 29.) In May 2008, Mr. Carter

refinanced his home, at the same time obtaining a lender's title insurance policy with a face

value of $168,743 from Huntington Title and Escrow, LLC. ("Huntington"). (*Id.* at ¶ 30-31.)

Huntington was acting as a local insurance producer on behalf of Stewart, a Texas corporation

doing business in Maryland as a title insurance underwriter. (*Id.* at ¶¶ 32, 11.) Stewart charged

Mr. Carter a premium of $507 for the title insurance policy. (*Id.* at ¶ 33.)

On September 30, 2011, Mr. Carter filed a complaint with the Maryland Insurance

Administration ("MIA"), on behalf of himself and as part of a class of similarly situated persons,

in which he claimed that Stewart had overcharged him for the title insurance policy. (*Id.* at ¶ 38.)

A few months later, on January 17, 2012, Mr. Carter filed this class action complaint against

Stewart, asserting common law claims for money had and received, negligence, and breach of

contract, and three violations of the civil Racketeer Influenced and Corrupt Organizations Act

("RICO") based on Stewart's alleged failure to charge eligible consumers a discounted title

insurance rate. Mr. Carter claims that Stewart violated statutory and common law by charging

him and the members of the class he seeks to represent premiums for title insurance that exceed

rates permitted under Maryland law.[1] The plaintiffs claim that, despite full knowledge that Mr.

Carter and the class members were eligible for a discounted "reissue rate," Stewart "willfully and

knowingly" charged them at the non-discounted, original issue rate and "pocketed the

difference."[2] (*Id.* at ¶¶ 35-37.) The plaintiffs further allege that Stewart Title participated as co-

---

[1] The purported class is defined as "All persons or entities in Maryland who, within 10 years of having previously purchased title insurance in connection with their mortgage or fee interest, refinanced the identical mortgage or fee interest, and were charged a title insurance premium by Stewart Title to secure a Stewart title insurance policy that exceeded the applicable premium discount or 'reissue rate' for title insurance Stewart had on file with the Maryland Insurance Administration that such persons or entities should have been charged." (ECF No. 20, ¶ 40.) Mr. Carter asserts that his claims are typical of each class member's claims.

[2] The Maryland Insurance Code requires that a title insurer (1) "file with the Commissioner all rates or premiums . . . it proposes to use" and (2) "hold to the rates or premiums as approved by the Commissioner." Md. Code, Ins. §§ 11-403(a)(1), 11-407(b); *see also* § 27-216(b)(1) ("A person may not willfully collect a premium or charge for insurance that . . . exceeds . . . [the] rates as filed with and approved by the Commissioner.") The plaintiffs allege that under the rate schedules Stewart filed with the Commissioner, individuals buying title insurance for a mortgage

conspirators with unnamed insurance producers and other entities "in furtherance of the scheme to collect excessive and unearned title insurance premiums at the expense of the consumer." (*Id.* at ¶ 15.) Mr. Carter also filed motions to certify the class and to stay the proceedings pending administrative review by the MIA. This court approved the motion for stay on January 26, 2012.

In a letter issued on April 2, 2012, the MIA determined that Stewart, through its insurance producers, violated § 27-614(b) of the Insurance Article, Annotated Code of Maryland, when it failed to charge Mr. Carter the reissue rate for his title insurance premium. (Pl.'s Opp., ECF No. 24, Ex. 1, at 2). The MIA concluded that Mr. Carter had been overcharged $164.50 for the insurance policy and $25.00 for the insurance commitment, and that he was entitled to a refund from Stewart of the amount of the overcharge plus interest. (*Id.*) Although Mr. Carter requested "class-wide relief" for "thousands of consumers," the MIA did not address the class claim, stating "the MIA does not have sufficient information to address allegations with regard to unnamed and unspecified persons or transactions." (*Id.* at 1.) On April 13, 2012, Stewart tendered payment to Mr. Carter through his counsel in the form of a check in the amount of the overcharge, plus interest, which Mr. Carter refused to accept. (Def.'s Mot. to Dismiss, ECF No. 23, at 4; Pl.'s Opp., ECF No. 24, at 2.)

On July 2, 2012, this court lifted the stay and granted Mr. Carter's motion for leave to file an amended complaint. A month later, on August 3, 2012, Stewart filed a motion to dismiss. Stewart argues that Mr. Carter's claims are moot because he sought and received full restitution from Stewart through the MIA proceeding. Stewart also claims that the Fourth Circuit's decision in *Woods v. Stewart Title Guaranty Company*, No. 10-2104 (4th Cir. Nov. 2, 2011), requires dismissal of Mr. Carter's claims. Mr. Carter was a class member in the *Woods* case, in which the

---

refinancing were entitled to a 40% discount off of Stewart's published rates (the "reissue rate") if they had purchased title insurance for the same mortgage within the previous 10 years. (ECF No. 1, ¶¶ 21-22.)

plaintiffs sued Stewart for money had and received based on allegations that Stewart had overcharged Ms. Woods and similarly situated homeowners for title insurance. *See Woods v. Stewart Title Guar. Co.*, No. 06-0705 (D. Md.). Pursuant to *Arthur v. Ticor Title Insurance Company*, 569 F.3d 154 (4th Cir. 2009), this court dismissed Ms. Woods's claim for money had and received without prejudice and decertified the class for failure to exhaust administrative remedies with the Maryland Insurance Administration. *Woods v. Stewart Title Guar. Co.*, 2010 WL 786294, *2-3 (D. Md. Mar. 3, 2010).

Mr. Carter previously also brought suit against Huntington based on the transaction at issue in this case. In 2009, Mr. Carter filed a class action suit against Huntington in Baltimore City Circuit Court, alleging common law claims of money had and received and negligent misrepresentation.  After the circuit court dismissed the suit for failure to exhaust administrative remedies, Mr. Carter appealed, and the case was eventually heard in the Maryland Court of Appeals. The Court of Appeals held that Maryland law vests the MIA with primary jurisdiction over claims based upon allegations of overcharges for title insurance. *Carter v. Huntington Title & Escrow, LLC*, 420 Md. 605, 635, 24 A.3d 722, 739 (Md. 2011). The court remanded the case to the circuit court, instructing it to stay further proceedings pending the outcome of the administrative adjudication. *Id.* at 741.

**Discussion**

The issue before the court is whether Stewart's tender of payment of the overcharge plus interest rendered Mr. Carter's claims moot, requiring their dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

"'[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction.'" *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011)

(quoting *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008)).  A case is moot "'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Id.* A case can become moot due to a change in factual circumstances or in the law. *Id.* "'Generally speaking, one such [factual] circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim." *Id.* (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)).

Stewart claims that the Fourth Circuit's ruling in *Woods v. Stewart Title Guaranty Company*, No. 10-2104 (4th Cir. Nov. 2, 2011), compels dismissal of Mr. Carter's claims. This court dismissed the *Woods* case without prejudice and decertified the class because of Ms. Woods's failure to exhaust administrative remedies with the Maryland Insurance Administration. *Woods v. Stewart Title Guar. Co.*, 2010 WL 786294, *2-3 (D. Md. Mar. 3, 2010). Ms. Woods then filed a complaint with the MIA, and the MIA issued a decision that Ms. Woods had been overcharged. Stewart tendered a check for the overcharge plus interest, but Ms. Woods refused to accept it. Ms. Woods then sought to reopen the case on a Rule 60(b) motion for reconsideration, but this court denied the motion because Ms. Woods had not satisfied one of the enumerated grounds for relief in Rule 60(b) – namely, the MIA's decision was not newly discovered evidence under Rule 60(b)(2) and Ms. Woods had not shown "extraordinary circumstances" necessary to grant a motion under Rule 60(b)(2). *Woods v. Stewart Title Guar. Co.*, 2010 WL 3395655, at *2 (D. Md. Aug. 26, 2010). Ms. Woods appealed, and the Fourth Circuit subsequently dismissed her appeal as "moot." *Woods*, No. 10-2104, at *1.

Stewart argues that the Fourth Circuit dismissed Ms. Woods's appeal as moot because her claim was fully satisfied through the MIA proceeding. Mr. Carter counters that "the finding of mootness was limited to the appeal, not the claim itself." (Pl.'s Opp., ECF No. 24, at 13.) Mr.

Carter is correct. Ms. Woods appealed this court's dismissal of her case on the grounds that she was not required to administratively exhaust. While her appeal was pending, however, she exhausted administrative remedies. As a consequence, the Fourth Circuit dismissed her appeal as moot. From a review of the transcript of oral argument, as well as considering the procedural posture of the case, it is clear that the Fourth Circuit did not decide whether Stewart had mooted Ms. Woods's claims by tendering payment for the overcharge. *Woods* therefore has no bearing on the question of mootness in this case.

As for Stewart's argument that payment of the overcharge constituted full relief sufficient to moot Mr. Carter's claims, that too is unavailing. In *Simmons v. United Mortgage & Loan Investment, LLC*, the Fourth Circuit determined that an offer of relief that did not include an offer of judgment was inadequate to moot a claim. 634 F.3d at 766. The district court had dismissed as moot a case brought under the Fair Labor Standards Act after the defendants made a settlement offer "for full relief, including attorney's fees and taxable costs." *Id.* at 762. The Fourth Circuit reversed, emphasizing that the settlement offer, while purporting to offer "full relief," did not include an offer of judgment against the defendants. *Id.* at 764. The court explained that from a plaintiff's view, a judgment in his or her favor "is far preferable to a contractual promise" to pay the same amount "because district courts have inherent power to compel defendants to satisfy judgments against them . . . but lack the power to enforce the terms of a settlement agreement absent jurisdiction over a breach of contract action for failure to comply with the settlement agreement." *Id.* at 765. Though it noted that "the doctrine of mootness is constitutional in nature, and therefore, not constrained by the formalities of Rule 68," *id.* at 764, the court nonetheless concluded that the defendant's failure to offer judgment, along with the conditional and

ambiguous nature of the settlement offer, prevented the mooting of the plaintiffs' claims. *Id.* at 767.

Turning to the present case, there is no dispute that Stewart did not offer judgment along with the check it tendered. As in *Simmons*, without a judgment in Mr. Carter's favor, a court would have no basis to compel Stewart to pay Mr. Carter should the check turn out to be defective in some way. Stewart's failure to offer the complete relief to which Mr. Carter claims to be entitled – namely, judgment in his favor – therefore renders Stewart's efforts insufficient to moot this case.

In addition, Stewart failed to offer Mr. Carter the full amount he could conceivably obtain if the case proceeded to trial. The Fourth Circuit has held that an offer of judgment, in order to moot a claim, must be for the entire amount the plaintiff might be able to receive on his claims. *See Warren v. Sessoms*, 676 F.3d 365, 372 (4th Cir. 2012). In *Warren*, the plaintiff brought suit against a debt collector for violations of the Fair Debt Collection Practices Act. *Id.* at 368. The plaintiff sought an award for unspecified actual damages, statutory damages of $1,000, costs, and reasonable attorney's fees. *Id.* at 369. The defendants moved to dismiss the case after they offered the plaintiff judgment under Rule 68 for the maximum statutory damages and two alternative actual damage awards: $250 or an amount determined by the court. *Id.* The Fourth Circuit held that neither option mooted the plaintiff's case because she might have been able to recover more than $250 if her case proceeded to trial, and the defendant's alternate offer was conditional, not unequivocal. *Id.* at 372.

Another judge in this district also has recognized, in a case similar to the present one, that a defendant insurer's payment of an overcharge with interest does not automatically moot the plaintiff's claims. *Mitchell-Tracey v. United General*, 839 F. Supp. 2d 821 (D. Md. 2012). In

*Mitchell-Tracey*, the plaintiff homeowners sought review of the court clerk's order taxing costs in favor of the defendant title insurers after the court dismissed the case for failure to exhaust administrative remedies. *Id.* at 824-25. In vacating the clerk's order on the grounds that the defendant was not the prevailing party, the court noted that the plaintiffs were free to file suit again seeking punitive damages, even though they might have been unable to seek compensatory damages, having obtained them through the administrative process following dismissal. *Id.* at 826.

Mr. Carter claims that additional remedies may be available beyond restitution of the overcharge; thus, Stewart did not provide "full relief" sufficient to moot his claims. Stewart argues that Mr. Carter "has no possible claim for punitive damages, attorney's fees, treble damages, [or] costs . . . based on her [sic] common law claims." (Def.'s Reply, ECF No. 25, at 6.) Stewart also denies that Mr. Carter has a "legitimate" claim for treble damages or attorney's fees on his RICO claims. (*Id.*)

 The court agrees with Mr. Carter. As to Mr. Carter individually, his civil RICO and common law claims still stand. Whether he can obtain additional damages on these claims has not been decided yet. Because Mr. Carter may be entitled to other remedies beyond the amount of the overcharge plus interest, Stewart has not provided him with the "full relief" necessary to moot his claims.

Finally, Stewart cannot moot Mr. Carter's class action complaint prior to a determination of class certification simply by offering relief as to Mr. Carter's individual claims. Although the Fourth Circuit has not addressed this precise question, several other circuits have. In *Pitts v. Terrible Herbst*, the defendant employer attempted to moot a class action complaint by making a Rule 68 offer of judgment for the full amount of the putative class representative's individual

monetary claims before he could seek class certification. 653 F.3d 1081, 1085 (9th Cir. 2011). The Ninth Circuit held that the employer's offer (which the named plaintiff refused) did not render the class action moot, noting that "[o]nly once the denial of class certification is final does the defendant's offer – if still available – moot the merits of the case because the plaintiff has been offered all that he can possibly recover through litigation." *Id.* at 1092. Other circuits similarly have held that, absent undue delay, a plaintiff may move to certify a class and avoid mootness even after being offered complete relief. *See Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249-50 (10th Cir. 2011); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920-21 (5th Cir. 2008); *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3d Cir. 2004). *But cf. Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) (holding that an offer of full relief to a named plaintiff mooted a class action where no motion for class certification was pending, but noting that "pendency of [a class certification] motion protects a putative class from attempts to buy off the named plaintiffs"). In addition, a judge in this district has determined that a defendant's offer of complete relief as to a putative class representative's individual claim did not moot that claim where the representative had not yet had an opportunity to move for class certification. *See Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, -- F. Supp. 2d --, 2012 WL 3090297, *4-5 (D. Md. July 30, 2012).

Unlike in *Pitts* and *Kensington*, the plaintiffs in the present case *have* filed a motion for class certification. Even under *Damasco*, therefore, the class claims would not be moot. As yet, however, the court has not ruled on the motion. While it is not necessary to reach this issue because Stewart did not offer full relief in the form of an offer of judgment, it is appropriate to note that allowing Stewart to moot Mr. Carter's claim via an offer of individual relief would effectively nullify the plaintiffs' ability, potentially, to obtain class certification of their claims.

Although Stewart cites the Fourth Circuit's ruling in *Zimmerman v. Bell*, 800 F.2d 386 (1986), in support of its mootness argument, this case is distinguishable. Unlike in the present case, the defendants in *Zimmerman* offered judgment in the full amount of damages to which the named plaintiff claimed individually to be entitled *after* the district court denied the motion for class certification. *Id.* at 388. As a result, the Fourth Circuit concluded that "[the plaintiff's] personal stake in the outcome had disappeared" and therefore "there was no longer any case or controversy." *Id.* at 390. Here, by contrast, Stewart has not offered Mr. Carter the full relief to which he claims to be entitled, and the court has not yet decided whether to certify the class.

In sum, Stewart has failed to provide Mr. Carter with the complete relief necessary to moot his claims. Stewart has made no offer of judgment enforceable in court, nor has Stewart tendered anything for punitive damages, attorney's fees, treble damages, or any other amounts Mr. Carter might receive if his current claims survive. Furthermore, the court has yet to rule on the plaintiffs' motion for class certification, and Stewart has declined to offer any relief to the putative class. Accordingly, this case is not moot, and Stewart's motion to dismiss will be denied.

A separate Order follows.

February 4, 2013                                                  /s/
Date                                                    Catherine C. Blake
                                                        United States District Judge

10